IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

PITTSBURGH DIVISION

LARRY ALLEN SLEDGE,

  Plaintiff

  vs.

JANE DOE, NURSE AT S.C.I.
FAYETTE, et al.,

  Defendants.

)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)

2:24-CV-01079-RAL

RICHARD A. LANZILLO
Chief United States Magistrate Judge

MEMORANDUM OPINION ON
DEFENDANTS' MOTION TO DISMISS
THE SECOND AMENDED
COMPLAINT

IN RE: ECF NO. 37

## I. Introduction

Corrections Defendants have moved to dismiss Plaintiff Larry Allen Sledge's
Second Amended Complaint under Federal Rule of Civil Procedure 12(b)(6). ECF No.
37. For the reasons discussed below, the Court will grant Defendants' motion and
dismiss this action.

## II. Background and Procedural History

Sledge, an inmate in the custody of the Pennsylvania Department of
Corrections ("DOC"), initiated this *pro se* civil rights action by lodging a proposed
complaint, ECF No. 1, and filing a motion to proceed *in forma pauperis*, ECF No. 5.
Earlier in this litigation, the Court directed Sledge to amend his pleading because the
proposed complaint failed to identify a viable defendant. *See* ECF No. 9. Thereafter,
Sledge filed an amended complaint against four individuals at the State Correctional

Institution at Fayette ("SCI-Fayette"): Nurse Jane Doe, Sergeant Mayerich, CO Kirkland, and Mailroom Supervisor L. Allen. ECF No. 11. The Court subsequently permitted Sledge to file a Second Amended Complaint ("SAC"), which names two additional individuals as defendants: Superintendent Tina Walker and Mailroom Supervisor A. Traficante. ECF No. 22; *see* ECF No. 23. Sledge sues all Defendants in their individual and official capacities. ECF No. 22, ¶ 10.[1]

As set forth in his pleading, the events giving rise to Plaintiff's claims took place at SCI-Fayette between April 2024 and January 2025. ECF No. 22.[2] On April 4, 2024, Sledge was housed in the RHU for a pending misconduct charge. *Id.*, p. 7. On April 5, 2024, Nurse Jane Doe did not give Sledge his morning dose of Carvedilol. *Id.*[3] She stated the medication was still in his property and would be retrieved. *Id.* Sledge told the nurse she was lying because he received his evening dose the night before. *Id.* Nurse German gave Sledge his evening dose of Carvedilol on April 5, 2024, and stated he would tell the AM nursing staff where the medication was located. *Id.* On the morning of April 6, 2024, Nurse Jane Doe did not give Sledge his Carvedilol or Lisinopril. *Id.* At 2:30 p.m., Sledge told CO Kirkland and Sergeant Mayerich he was having chest pains from the missed medications, *id.*, pp. 3, 7, and "they replied they would let medical know that [he] needed medical attention," ECF No. 1, p. 6. At 7:00

---

[1] Excluding Nurse Jane Doe, the Court refers to the named defendants collectively as "Corrections Defendants."

[2] The following summary derives primarily from the SAC. The Court also includes citations to the original complaint to aid clarity.

[3] Carvedilol is prescribed under the brand name Coreg. Sledge explained in his original complaint that he is prescribed Coreg, twice per day, for congestive heart failure, Rosuvastatin for cholesterol, and Lisinopril for high blood pressure. ECF No. 1, p. 5.

p.m., the PM nurse administered Sledge's evening medications. *Id.* The nurse said medical did not receive Sledge's request, and that "he would check up on [Sledge] later in his shift to see if [he] was feeling any better." *Id.* The following morning, Nurse Jane Doe administered Sledge's Coreg and Lisinopril and "stated she forgot to bring [his] medication" the day before. *Id.*

Sledge filed a grievance regarding the medication issue, which Walker denied on appeal. ECF No. 22, p. 7. On May 31, 2024, he "sent all copies" to the Secretary's Office of Inmate Grievances and Appeals, which denied his appeal for failing to enclose the required documents. *Id.*, pp. 3, 7. According to the SAC, Mailroom Supervisor L. Allen handled outgoing mail on May 31, 2024. *Id.*, p. 3.

In August 2024, Blackstone Career Institute shipped four paralegal books to Sledge. ECF No. 22-1, p. 2. Mailroom Supervisor A. Trafficante received the package on September 6, 2024. ECF No. 22, ¶ 14; *see* ECF No. 41, p. 1. SCI-Fayette then "lost" or "misplaced" the mail, and "the books were never recovered." ECF No. 22, pp. 3, 7. Sledge learned about the missing books when he contacted Blackstone to inquire about the status of his package. *Id.* He filed a grievance and was awarded $60 to pay for reshipping the books. *Id.* On January 30, 2025, Superintendent Walker denied his appeal seeking additional damages for "the paralegal wages lost . . . due to the S.C.I. Fayette mail room's negligent behavior and his hindered course completion." *Id.*, ¶ 15.

Based on the foregoing, Sledge asserts violations of his rights under the Eighth and Fourteenth Amendments to the United States Constitution. ECF No. 22, pp. 4–

5. For relief, he seeks a declaratory judgment and compensatory and punitive damages. *Id.*, p. 6.

In support of their motion to dismiss the SAC, Corrections Defendants argue that Sledge's official capacity claims are barred by the Eleventh Amendment to the United States Constitution and further that the SAC fails to plead factual allegations sufficient to state a claim for relief. *See* ECF No. 38. Sledge filed an opposition to the motion, ECF No. 40, and a declaration in support of his response, ECF No. 41. The matter is now ripe for disposition.[4]

## III.   Standard of Review

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) tests the legal sufficiency of the complaint. *Kost v. Kozakiewicz*, 1 F.3d 176, 183 (3d Cir. 1993). A complaint must, under Federal Rule of Civil Procedure 8(a)(2), contain "a short and plain statement of the claim showing that the pleader is entitled to relief." This "requires a 'showing,' rather than a blanket assertion, of entitlement to relief." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 n.3 (2007). In other words, plaintiffs must allege facts sufficient "to raise a right to relief above the speculative level" that "nudge[] their claims across the line from conceivable to plausible." *Id.* at 555, 570. Accordingly, "[t]o survive a motion to dismiss, a complaint must contain sufficient

---

[4] The Court has jurisdiction over this action under 28 U.S.C. §§ 1331 and 1367. Sledge and Corrections Defendants have consented to the jurisdiction of a United States Magistrate Judge to conduct all proceedings in this case as authorized by 28 U.S.C. § 636(c). *See Carter v. Kraus*, 2025 WL 1756682, at *1 n.1 (W.D. Pa. June 25, 2025) (consent of unserved Doe defendants is unnecessary to proceed under § 636(c)).

4

factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotations and citation omitted).

In deciding a Rule 12(b)(6) motion, the Court accepts as true the complaint's well-pleaded factual allegations and examines them in a light most favorable to the plaintiff. *U.S. Express Lines Ltd. v. Higgins*, 281 F.3d 383, 388 (3d Cir. 2002). However, the Court is "not compelled to accept unsupported conclusions and unwarranted inferences, or a legal conclusion couched as a factual allegation." *Baraka v. McGreevey*, 481 F.3d 187, 195 (3d Cir. 2007) (internal quotations and citations omitted); *see Iqbal*, 556 U.S. at 678. The Court's focus is simply whether the challenged claims should be allowed to move forward, not whether the plaintiff will ultimately prevail on his claims. *See Twombly*, 550 U.S. at 563 n.8. Further, "a court must consider only the complaint, exhibits attached to the complaint, matters of public record, as well as undisputedly authentic documents if the complainant's claims are based upon these documents" when deciding the motion to dismiss. *Mayer v. Belichick*, 605 F.3d 223, 230 (3d Cir. 2010).

Additionally, because the Court granted Plaintiff leave to proceed *in forma pauperis* in this action, *see* ECF No. 5, his pleading is subject to the screening provisions in 28 U.S.C. § 1915(e)(2). That statute requires the Court to review the complaint for cognizable claims and *sua sponte* dismiss the action or any portion thereof that is frivolous, malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915(e)(2)(B) (requiring dismissal of the case "at any time"); *Muchler v.*

5

*Greenwald*, 624 Fed. Appx. 794, 796 (3d Cir. 2015). In performing this mandatory screening function, a district court applies the same standard applied to motions to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure. *Banks v. County of Allegheny*, 568 F. Supp. 2d 579, 588–89 (W.D. Pa. 2008); *Schreane v. Seana*, 506 Fed. Appx. 120, 122 (3d Cir. 2012).

Finally, because Sledge is proceeding *pro se*, his allegations, "however inartfully pleaded," must be held "to less stringent standards than formal pleadings drafted by lawyers." *Haines v. Kerner*, 404 U.S. 519, 520 (1972); *see also Denton v. Hernandez*, 504 U.S. 25, 32 (1992) (the "initial assessment of the *in forma pauperis* plaintiff's factual allegations must be weighted in favor of the plaintiff"). If the Court can reasonably read his pleading to state a valid claim upon which relief can be granted, it will do so despite his failure to cite proper legal authority, confusion of legal theories, poor syntax and sentence construction, or unfamiliarity with pleading requirements. *See Boag v. MacDougall*, 454 U.S. 364, 365 (1982); *U.S. ex rel. Montgomery v. Brierley*, 414 F.2d 552, 555 (3d Cir. 1969). But while courts construe *pro se* pleadings liberally, *Erickson v. Pardus*, 551 U.S. 89, 94 (2007), "there are limits to [this] procedural flexibility," and the litigant must still allege sufficient facts to support a valid claim, *Mala v. Crown Bay Marina, Inc.*, 704 F.3d 239, 245 (3d Cir. 2013).

## IV.   Discussion and Analysis

The SAC asserts the following claims: (1) an Eighth Amendment deliberate indifference to serious medical need claim based on Nurse Jane Doe's failure to

6

administer Sledge's medication, and CO Kirkland and Sergeant Mayerich's alleged failure to notify the medical department of Sledge's request for treatment; (2) a Fourteenth Amendment due process claim against Supervisor Allen alleging tampering with Sledge's grievance mailing; (3) a Fourteenth Amendment due process claim against Supervisor Traficante for failure to notify Sledge that his paralegal books were received and then lost; (4) an Eighth Amendment retaliation claim against Traficante based on the lost books; and (5) a Fourteenth Amendment failure to train and supervise claim against Superintendent Walker. *See* ECF No. 22, pp. 4-5. Corrections Defendants argue the SAC fails to state a viable claim for relief against any Defendant. For the reasons set forth below, the Court agrees.[5]

### A. Official Capacity Claims

Sledge's claims against Corrections Defendants in their official capacities for money damages fail as a matter of law.

As Corrections Defendants correctly assert, the Eleventh Amendment to the United States Constitution precludes suits against a state and its agencies in federal court. U.S. Const. amend XI; *Kentucky v. Graham*, 473 U.S. 159, 165–67 (1985); *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 100 (1984). This protection extends to state employees sued in their official capacities. *See A.W. v. Jersey City*

---

[5] To the extent Sledge's opposing brief and supporting declaration include additional factual allegations not found in his pleading, they will not be addressed. *Boston v. Prime Care Med., Inc.*, 2018 WL 3032853, at *5 n.6 (E.D. Pa. June 18, 2018) (a plaintiff "may not assert new claims or rely on new facts in response to a motion to dismiss"); *Hammond v. City of Philadelphia*, 2001 WL 823637, at *2 (E.D. Pa. June 29, 2001) ("A party may not rely on new facts in submissions in response to a motion to dismiss to defeat the motion." (collecting cases)); *Pennsylvania ex rel. Zimmerman v. PepsiCo, Inc.*, 836 F.2d 173, 181 (3d Cir. 1988) ("It is axiomatic that the complaint may not be amended by the briefs in opposition to a motion to dismiss." (citation omitted)).

*Pub. Sch.*, 341 F.3d 234, 238 (3d Cir. 2003); *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989) ("[A] suit against a state official in his or her official capacity is not a suit against the official but rather is a suit against the official's office."). Here, the DOC is an agency of the Commonwealth of Pennsylvania, and the Commonwealth has not waived its Eleventh Amendment immunity from lawsuits filed in federal court. Therefore, the Commonwealth, its departments, and their officials sued in their official capacities are immune from suit in federal court. *Johnson v. Wenerowicz*, 440 F. App'x 60, 62 (3d Cir. 2011); *Talbert v. Dep't of Corr.*, 2022 WL 17177479, at *4 (E.D. Pa. Nov. 23, 2022). As such, Sledge's official capacity claims against Corrections Defendants for money damages are barred by the Eleventh Amendment. *Downey v. Pa. Dep't of Corr.*, 968 F.3d 299, 310–11 (3d Cir. 2020); *Washington v. Wetzel*, 2022 WL 1782509, at *3 (W.D. Pa. June 1, 2022), *aff'd*, 2024 WL 5154024 (3d Cir. Dec. 18, 2024).[6]

B. Personal Involvement

To state a claim under § 1983, a plaintiff must demonstrate that each defendant, acting under color of state law, deprived the plaintiff of a right secured by the Constitution or laws of the United States. *Groman v. Township of Manalapan*, 47 F.3d 628, 633 (3d Cir. 1995) (citing *Gomez v. Toledo*, 446 U.S. 635, 640 (1980)). When those claims implicate multiple defendants, the plaintiff "must show that each

---

[6] Additionally, Sledge's complaint fails to provide a proper basis for declaratory relief because "even if the defendants violated his rights in the past, he is not entitled to a declaration to that effect." *Naranjo v. City of Philadelphia*, 626 F. App'x 353, 356, n.1 (3d Cir. 2015); *see Washington*, 2022 WL 1782509, at * 4 ("declaratory judgment is unavailable 'solely to adjudicate past conduct' or 'to proclaim that one party is liable to another'" (citation omitted)); *Donahue v. Super. Ct. of Pa.*, 2019 WL 913812, at *3 (M.D. Pa. Feb. 25, 2019) ("[d]eclaratory judgment is not meant to adjudicate alleged past unlawful activity").

and every defendant was 'personal[ly] involve[d]' in depriving him of his rights." *Kirk v. Roan*, 2006 WL 2645154, at *3 (M.D. Pa. 2006) (alterations in original) (quoting *Evancho v. Fischer*, 423 F.3d 347, 353 (3d Cir. 2006)). This means that each defendant must have played an affirmative part in the complained-of misconduct. *See Baraka*, 481 F.3d at 210 ("A defendant in a civil rights action 'must have personal involvement in the alleged wrongs to be liable,' and 'cannot be held responsible for a constitutional violation which he or she neither participated in nor approved.'" (citations omitted)). These principles apply with equal force where the defendants are supervising prison officials. *Iqbal*, 556 U.S. at 677 ("each Government official, his or her title notwithstanding, is only liable for his or her own misconduct"); *Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1998) (liability for supervisory officials must still be based on "personal involvement in the alleged wrongs"); *Dooley v. Wetzel*, 957 F.3d 366, 374 (3d Cir. 2020) (liability must be demonstrated by showing that the defendant personally directed or, with actual knowledge, acquiesced in the conduct). In the absence of specific allegations that a defendant played a role in depriving the plaintiff of a constitutional right, dismissal is appropriate. *See, e.g., Mearin v. Swartz*, 951 F. Supp. 2d 776, 782 (W.D. Pa. 2013) (dismissing claims against certain defendants because the complaint was "devoid of any facts suggesting that [they] . . . had any personal involvement" in the alleged Eighth Amendment violation).

Here, the SAC wholly fails to plead Superintendent Walker's personal involvement in the alleged deprivation of Sledge's constitutional rights. The only averment specific to Walker is that she denied Sledge's grievance appeals. ECF No.

9

22, pp. 3, 7. But it is "well established that the filing of a grievance is not sufficient to show the actual knowledge necessary for a defendant to be found personally involved in the alleged unlawful conduct." *Mearin*, 951 F. Supp. 2d at 782; *see Mincy v. Chmielsewski*, 508 Fed. Appx. 99, 104 (3d Cir. 2013) ("an officer's review of, or failure to investigate, an inmate's grievances generally does not satisfy the requisite personal involvement"); *Rode*, 845 F.2d at 1208 (a defendant's failure, after being informed of the violation through the filing of grievances, reports, or appeals, to take action to remedy the alleged wrong is not enough to show that the defendant had the necessary personal involvement).[7]

Further, "merely hypothesiz[ing] that [Superintendent Walker] may have been somehow involved simply because of h[er] position" does not create a plausible basis for inferring her personal involvement. *Evancho*, 423 F.3d at 354; *see Carroll v. Delaware County*, 2023 WL 2868020, at *19 (E.D. Pa. Apr. 10, 2023) ("Generalized allegations a supervisory state actor is 'in charge of' or 'responsible for' an office or facility are insufficient to allege personal involvement in an underlying constitutional violation."); *Kloss v. SCI-Albion*, 2018 WL 4609144, at *4 (W.D. Pa. Aug. 15, 2018) (allegation that supervisory defendant is legally responsible for operation of prison and welfare of its inmates is insufficient to show personal involvement), *report and recommendation adopted*, 2018 WL 4599814 (W.D. Pa. Sept. 25, 2018).[8]

---

[7] Additionally, "because a prisoner has no free-standing constitutional right to an effective grievance process, [Sledge] cannot maintain a constitutional claim against [any Defendant] based upon his perception that [the Defendant] ignored and/or failed to properly investigate his grievances." *Woods v. First Corr. Med. Inc.*, 446 F. App'x 400, 403 (3d Cir. 2011).

[8] Sledge's insufficient allegations of personal involvement negate his ability to state a plausible Fourteenth Amendment failure to train and supervise claim against Superintendent Walker. *See Van*

Accordingly, because the allegations here fall well short of the standard for personal involvement, dismissal of Sledge's claims against Superintendent Walker is warranted. *See e.g., Powell v. McKeown*, 2020 WL 4530727, at *11–12 (M.D. Pa. Aug. 6, 2020) (dismissing due process claims against superintendent and chief hearing examiner for lack of personal involvement).

## C. Eighth Amendment Deliberate Indifference to Serious Medical Need

To establish a violation of his constitutional right to adequate medical care, Sledge must allege facts that demonstrate: (1) he had a serious medical need, and (2) acts or omissions by prison officials that reflect deliberate indifference to that need. *See Rouse v. Plantier*, 182 F.3d 192, 197 (3d Cir. 1999); *see also Estelle v. Gamble*, 429 U.S. 97, 104 (1976) ("deliberate indifference to serious medical needs of prisoners constitutes the 'unnecessary and wanton infliction of pain' proscribed by the Eighth Amendment" (citation omitted)). A serious medical need exists when "a failure to treat can be expected to lead to substantial and unnecessary suffering, injury, or

---

*Tassel v. Piccione*, 608 F. App'x 66, 69–70 (3d Cir. 2015) (non-specific allegations that broadly implicate a defendant without delineating individual conduct are legally insufficient); *e.g., Roland v. Blair Cnty. Prison*, 2021 WL 12336044, at *7 (W.D. Pa. Aug. 23, 2021) (allegation that supervisory defendant is responsible for overseeing facility and training staff, without more, does not state a plausible claim for failure to train staff to process prisoner mail); *Grier v. Clark*, 2020 WL 2105859, at *3–4 (W.D. Pa. Apr. 7, 2020) (no allegations to sustain a viable supervisory liability claim for failure to train), *report and recommendation adopted*, 2020 WL 2104794 (W.D. Pa. May 1, 2020).

Additionally, Corrections Defendants argue the SAC fails to properly plead a failure to train claim. Sledge did not respond to that analysis in his opposition brief. Consequently, the Court concludes that Plaintiff is either not asserting a claim for failure to train or has elected to abandon that theory of liability. *See Lada v. Delaware Cnty. Cmty. Coll.*, 2009 WL 3217183, at *10 (E.D. Pa. Sept. 30, 2009) ("plaintiffs who fail to brief their opposition to portions of motions to dismiss do so at the risk of having those parts of the motions to dismiss granted as uncontested"); *e.g., Tambasco v. U.S. Dep't of Army*, 2018 WL 1203466, at *2 (M.D. Pa. Mar. 8, 2018) (dismissing claim as unopposed where the plaintiff failed to respond to arguments in defendants' motion to dismiss). Accordingly, the Court will dismiss with prejudice the failure to train claim and will dismiss Superintendent Walker as a defendant in this action.

11

death." *Colburn v. Upper Darby Township*, 946 F.2d 1017, 1023 (3d Cir. 1991). Deliberate indifference is manifested by an intentional refusal to provide care, delayed medical treatment for non-medical reasons, denial of prescribed medical treatment, a denial of reasonable requests for treatment that results in suffering or risk of injury, *Durmer v. O'Carroll*, 991 F.2d 64, 68 (3d Cir. 1993), or "persistent conduct in the face of resultant pain and risk of permanent injury," *White v. Napoleon*, 897 F.2d 103, 109 (3d Cir. 1990).

Assuming for purposes of the instant motion that Sledge's condition presented a "serious medical need," the allegations of the SAC fall short of supporting a plausible inference that any Defendant acted with deliberate indifference to that need. Allegations of deliberate indifference must satisfy "a high threshold." *Anderson v. Bickell*, 2018 WL 5778241, at *2 (3d Cir. Nov. 2, 2018). "[P]rison authorities are accorded considerable latitude in the diagnosis and treatment of prisoners," *Durmer*, 991 F.2d at 67, and "it is well-settled that an inmate's dissatisfaction with a course of medical treatment, standing alone, does not give rise to a viable Eighth Amendment claim," *Tillery v. Noel*, 2018 WL 3521212, at *5 (M.D. Pa. June 28, 2018) (collecting cases), *report and recommendation adopted*, 2018 WL 3518459 (M.D. Pa. July 20, 2018). Similarly, "the mere misdiagnosis of a condition or medical need, or negligent treatment provided for a condition, is not actionable as an Eighth Amendment claim because medical malpractice standing alone is not a constitutional violation." *Tillery*, 2018 WL 3521212, at *5 (citing *Estelle*, 429 U.S. at 106). Thus, "courts have consistently rejected Eighth Amendment claims where an

inmate has received some level of medical care." *Clark v. Doe*, 2000 WL 1522855, at *2 (E.D. Pa. Oct. 13, 2000).

In the instant case, Sledge acknowledges that he received ongoing care at the prison for his heart condition, including morning and evening medications. Sledge acknowledges that he regularly received his medications expect on two occasions when Nurse Jane Doe missed his morning dosage. *See generally* ECF Nos. 1 & 22. Specifically, he alleges that Nurse Jane Doe did not administer his Carvedilol on April 5, 2024—the morning after he was transferred to the RHU—because she "said the medication was still in his property and would be retrieved." ECF No. 22, p. 7. On April 6, 2024, Nurse Jane Doe did not deliver either of Sledge's morning medications. *Id.* On April 7, 2024, Nurse Jane Doe administered both of Sledge's morning medications and "stated she forgot to bring [his] medication" the day before. ECF No. 1, p. 6. These allegations amount to, "at most, possible negligence, which is insufficient for an Eighth Amendment violation." *Hayes v. Gilmore*, 802 Fed. Appx. 84, 88 (3d Cir. 2020). They fall well short of supporting a plausible inference that the nurse intentionally withheld or delayed Sledge's medications.

Sledge also alleges that CO Kirkland and Sergeant Mayerich refused to notify the medical department of his request for treatment and that he "went untreated for the pain." ECF No. 22, ¶ 13. But Sledge acknowledges that he saw the PM nurse approximately four hours after he informed Corrections Defendants of his chest pain, and the nurse stated, "he would check up on [Sledge] later in his shift to see if [he] was feeling any better," ECF No. 1, p. 6. At best, Sledge's allegations may support a

delay in the response to his request but not a denial of medical care. And while a "significant delay in providing medical care to a prisoner in need of emergency treatment" may support an Eighth Amendment violation, *Buoniconti v. City of Philadelphia*, 148 F. Supp. 3d 425, 435 (E.D. Pa. 2015), the delay here was not of a sufficient duration to support such a finding. *See e.g.*, *Ayala v. Terhune*, 195 Fed. Appx. 87, 91 (3d Cir. 2006) (sporadic delays of up to four days in providing prescription medication to inmate did not amount to deliberate indifference).

The facts alleged in the SAC establish that Sledge was under the regular care of medical personnel at the prison. Because CO Kirkland and Sergeant Mayerich are not medical providers, "neither can be considered deliberately indifferent simply because they failed to respond directly to the medical complaints of a prisoner who was already being treated by the prison doctor." *Spruill*, 372 F.3d at 236 (quoting *Durmer*, 991 F.2d at 69). "[A]bsent a reason to believe (or actual knowledge) that prison doctors or their assistants are mistreating (or not treating) a prisoner, a non-medical prison official . . . will not be chargeable with the Eighth Amendment scienter requirement of deliberate indifference." *Id.* This is because where, like here, "a prisoner is under the care of medical experts . . . , a non-medical prison official will generally be justified in believing that the prisoner is in capable hands." *Id.* As in *Spruill*, the factual allegations set forth here "simply do not amount" to a denial of reasonable requests for treatment or an intentional refusal to provide needed care. *Id.* at 237 (allegation that CO failed to obtain immediate medical treatment for prisoner who reported fall due to severe back pain failed to state claim for deliberate

14

indifference, where prisoner "was receiving a minimal measure of medical attention" and he "did not allege that his condition was so dire and obvious" that lack of immediate treatment exposed him to undue suffering).

"[T]here is a critical distinction 'between cases where the complaint alleges a complete denial of medical care and those alleging inadequate medical treatment.'" *Pearson v. Prison Health Serv.*, 850 F.3d 526, 535 (3d Cir. 2017) (citation omitted). Sledge's SAC falls into the latter category. Because the SAC does not allege facts to support a finding that any Defendant delayed or interfered with Sledge's medical treatment for nonmedical reasons, it fails to state a plausible Eighth Amendment deliberate indifference claim. *See Young v. Quinlan*, 960 F.2d 351, 358 n.18 (3d Cir. 1992) ("disagreement with prison personnel over the exercise of medical judgment does not state a claim for relief" (citation omitted)), *superseded by statute on other grounds as stated in Nyhuis v. Reno*, 204 F.3d 65, 71 n.7 (3d Cir. 2000); *Hayes*, 802 Fed. Appx. at 88 ("Allegations of mere negligent treatment or even medical malpractice do not trigger the protections of the Eighth Amendment."); *Payo v. Stechschulte*, 2022 WL 912588, at *7 (W.D. Pa. Mar. 29, 2022) (finding no deliberate indifference where it was undisputed that "Plaintiff was seen, evaluated and treated on a regular basis and was prescribed medication as medically needed").

D. Fourteenth Amendment Due Process

"[P]risoners retain a liberty interest in corresponding by mail, and this interest is constrained by censorship or rejection of inmates' mail." *Pelino v. Wetzel*, 2022 WL 1239050, at *2 (3d Cir. Apr. 27, 2022) (citing *Vogt v. Wetzel*, 8 F.4th 182, 186 (3d Cir.

15

2021)). Thus, "prisons must notify inmates when their incoming mail is rejected." *Vogt*, 8 F.4th at 184. Here, however, Sledge does not allege that SCI-Fayette censored or rejected his mail without notice. Rather, he contends that, "due to the S.C.I. Fayette mail room's negligent behavior," the prison "lost" or "misplaced" his incoming mail from Blackstone Career Institute "without any notification" to him. ECF No. 22, pp. 3–4, 7. But the allegation that prison officials inadvertently misplaced Sledge's mail "is insufficient to state a violation of the due process clause," *Pelino*, 2022 WL 1239050, at *2 (mere possibility that prison policy could result in mail being misdelivered insufficient to state Fourteenth Amendment claim), which "is simply not implicated by a *negligent* act of an official causing unintended loss of or injury to life, liberty, or property," *id.* (quoting *Daniels v. Williams*, 474 U.S. 327, 328 (1986)). Nor does *Vogt* require prisons to notify inmates when mail is received. Therefore, as to Sledge's claim that prison officials negligently lost or misplaced his mail and failed to notify him, such allegations do not state a viable Fourteenth Amendment claim. *See, e.g., Jones v. Salt Lake County*, 503 F.3d 1147, 1162–63 (10th Cir. 2007) (prison's negligent failure to deliver mail due to human error by mailroom personnel does not implicate due process); *see also Wilson v. United States*, 332 F.R.D. 505, 525 (S.D.W. Va. 2019) ("Isolated or inadvertent incidents of lost mail, mail tampering, or the mishandling of mail are not actionable under § 1983." (collecting cases)).[9]

---

[9] To the extent Sledge brings a due process claim for property loss, such claim also fails. "Deprivation of inmate property by prison officials does not give rise to cognizable due process claim if the prisoner has an adequate post-deprivation state remedy." *Crosby v. Piazza*, 465 F. App'x 168, 172 (3d Cir. 2012); *see Allen v. Cooper*, 589 U.S. 248, 262 (2020) ("A State cannot violate [the Due Process] Clause unless it fails to offer an adequate remedy for [a deprivation], because such a remedy itself satisfies the demand of 'due process.'"). "Adequate remedies were available here as [Sledge] was provided an opportunity to file an administrative grievance," and if he was "dissatisfied with the outcome of the

16

Moreover, even if the allegations here were sufficient to support a procedural due process claim for rejection of mail without notice, the SAC fails to plead Defendant Traficante's personal involvement in the alleged violation. Supervisory officials such as Traficante are subject to liability where it is shown that they "participated in violating the plaintiff's rights, directed others to violate them, or, as the person in charge, had knowledge of and acquiesced" in a subordinate's unconstitutional conduct. *A.M. ex rel. J.M.K. v. Luzerne Cnty. Juv. Det. Ctr.*, 372 F.3d 572, 586 (3d Cir. 2004). There are no allegations that Traficante personally rejected,

---

administrative process," he could have filed a state court action. *Crosby*, 465 F. App'x at 172; *see Gorrio v. Briggs*, 2025 WL 2177826, at *22 (M.D. Pa. July 31, 2025) (the Pennsylvania Tort Claims Act "provides an adequate remedy for local prison officials' unlawful deprivation of inmate property"). Therefore, to the extent Sledge contends prison officials unlawfully deprived him of his personal property when they lost or otherwise failed to deliver his paralegal books, "the existence of this post-deprivation remedy forecloses [his] due process deprivation of property claim." *Mbewe v. Delbalso*, 2024 WL 510500, at *3 (3d Cir. Feb. 9, 2024) (affirming dismissal of inmate's claim alleging prison officials wrongfully confiscated his mail); *e.g.*, *Vogt v. Wetzel*, 2025 WL 4635360, at *9 (W.D. Pa. Nov. 10, 2025) ("[F]rom the day [plaintiff] learned his friend's letter was missing, he was free to pursue available state law remedies for any wrongful deprivation of his property. His failure to do so does not render the claim actionable through this litigation."), *report and recommendation adopted*, 2026 WL 456551 (W.D. Pa. Feb. 18, 2026); *Liptok v. Mason*, 2022 WL 214341, at *3 (M.D. Pa. Jan. 24, 2022) (allegation that prison officials lost or destroyed incoming mail failed to state a claim because "[n]either the negligent nor the unauthorized deprivation of property by a state employee rises to a due process violation if state law provides an adequate post-deprivation remedy").

Finally, to the extent the SAC can be read to assert a violation of Sledge's right to send and receive mail, it is well settled that "a single instance of interference with mail is usually insufficient to constitute a First Amendment violation," *Iwanicki v. Pa. Dep't of Corr.*, 582 F. App'x 75, 79 (3d Cir. 2014), and a prisoner seeking to raise such a claim must generally allege a pattern or practice of interference with his mail, *see id.* (citing *Davis v. Goord*, 320 F.3d 346, 351 (2d Cir. 2003) (isolated incidents will not support a constitutional claim)). *See also Johnson v. Eme*, 2026 WL 1382667, at *4 (D.N.J. May 18, 2026) ("An isolated act of mail interference—whether the product of negligence, administrative error, or a single officer's momentary lapse—does not implicate the constitutional values the First Amendment protects in the prison mail context. It is the systemic, repeated, or policy-driven suppression of an inmate's correspondence that rises to constitutional dimension."). Sledge's pleading is devoid of allegations to support that any Defendant could be personally liable for such a violation here. *See, e.g.*, *Schreane v. Marr*, 722 F. App'x 160, 167 (3d Cir. 2018) (affirming summary judgment for defendant on inmate's freedom of speech claim regarding his mail, where inmate alleged only a single instance of lost magazines and failed to show mailroom supervisor's personal involvement); *Ingram v. Mendoza*, 2022 WL 3716502, at *2 n.2 (D.N.J. Aug. 29, 2022) (three disparate incidents of mail interference involving different defendants did not amount to pattern or practice).

17

lost, or misplaced Sledge's mail, directed other staff to reject or not deliver the mail, or had actual knowledge of the lost/undelivered mail. Rather, the SAC alleges only that Traficante "handled the incoming mail sent to the institution by Blackstone Career Institute" and that this mail was then "lost by the institution without any notification [to Sledge] by [Traficante]." ECF No. 22, ¶ 14. But a supervisory official such as Traficante cannot be held liable for every allegedly illegal act that takes place in the prison mailroom. In the absence of any allegations to support that Traficante personally withheld Sledge's mail or otherwise knew it was not delivered to him, Traficante cannot be held liable for the failure to notify Sledge of the same.[10]

For all of these reasons, the SAC fails to state an actionable constitutional claim as to Sledge's paralegal books.[11] To the extent the SAC can be read to assert any claims under state law, including any claim for negligence, the Court declines to exercise supplemental jurisdiction over such claims.

---

[10] For similar reasons, the SAC fails to plead Supervisor Allen's personal involvement in any unconstitutional conduct. The only allegation specific to Allen is that she "handled outgoing mail to the Secretary Office of Inmate Grievances and Appeals." ECF No. 22, ¶ 14. Such allegation fails to support that Allen participated in, authorized, or acquiesced in the alleged tampering with Sledge's grievance mailing.

Furthermore, "[a]ccess to prison grievance procedures is not a constitutionally-mandated right, and allegations of improprieties in the handling of grievances do not state a cognizable claim under § 1983." *Glenn v. DelBalso*, 599 F. App'x 457, 459 (3d Cir. 2015); *see Burnside v. Moser*, 138 F. App'x 414, 416 (3d Cir. 2005) (same). Thus, as the Court previously advised Sledge at the March 2025 telephonic hearing, to the extent that prison officials frustrated his ability to pursue his grievance appeal, the Court may deem the grievance exhausted, but such allegations do not state an independent constitutional claim. Accordingly, the SAC fails to state a claim up which relief may be granted against Supervisor Allen.

[11] The SAC also brings an Eighth Amendment retaliation claim against Traficante. As Defendants point out, such claim is properly brought under the First Amendment. Sledge did not respond to Defendants' argument in his opposition brief. Consequently, the Court concludes Sledge is either not asserting a claim for retaliation or has elected to abandon that theory of liability. *See supra* note 8. The Court will therefore dismiss the retaliation claim with prejudice.

E. Leave to Amend

*Pro se* litigants are to be granted leave to file a curative amended complaint "even when a plaintiff does not seek leave to amend . . . unless an amendment would be inequitable or futile." *Alston v. Parker*, 363 F.3d 229, 235 (3d Cir. 2004), *abrogated on other grounds by Iqbal*, 556 U.S. at 678. However, the court "need not provide endless opportunities for amendment, especially where such opportunity already has been enjoyed." *Baker v. Moon Area Sch. Dist.*, 2018 WL 4057179, at *8 (W.D. Pa. Aug. 27, 2018) (internal quotations and citation omitted). Indeed, a district court's "substantial leeway in deciding whether to grant leave to amend" is "even broader" where "the court has already granted the requesting part an opportunity to amend his complaint." *Lake v. Arnold*, 232 F.3d 360, 373–74 (3d Cir. 2000).

In this case, despite the Court affording Sledge the opportunity to amend and cure the deficiencies in his claims, Sledge has failed to do so, and as discussed throughout this Opinion, it is clear that further amendment would be futile. *See, e.g.*, *Clark*, 2000 WL 1522855, at *4 n.3 (reasoning that plaintiff's "allegations concerning his medical treatment are sufficiently clear for [the court] to conclude that they are well below the standard for deliberate indifference established in *Estelle*"; thus, "[a]llowing plaintiff to more precisely plead these allegations in an amended complaint would be futile"). Accordingly, the Court will dismiss the SAC and the claims asserted therein with prejudice.

19

## V.    Conclusion

For the foregoing reasons, Corrections Defendants' motion to dismiss the Second Amended Complaint will be GRANTED.  Pursuant to the motion and the Court's screening authority under 28 U.S.C. § 1915(e)(2)(B), the Court will dismiss this action for failure to state a claim upon which relief can be granted.

A separate order follows.

Dated this 30th day of June, 2026.

BY THE COURT:

RICHARD A. LANZILLO
CHIEF UNITED STATES MAGISTRATE JUDGE